# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JORGE PENA, #M07556,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 24-cv-01875-SMY |
| ) | |
| **IDOC ADMINISTRATIVE REVIEW BD.,** ) | |
| **IDOC MEDICAL DIRECTOR,** ) | |
| **IL. DEPT. of HEALTH and FAMILY** ) | |
| **SERVICES,** ) | |
| **PURCHASING OFFICER-STATE of IL.,** ) | |
| **STRATEGIC SOURCING MANAGER-** ) | |
| **STATE of IL.,** ) | |
| **WEXFORD HEALTH SOURCES, INC.** ) | |
| **PRESIDENT/CEO,** ) | |
| **WEXFORD HEALTH SOURCES, INC.** ) | |
| **VICE PRESIDENT-CFO,** ) | |
| **BANTRY GROUP CORPORATION,** ) | |
| **A.D. WILLS, MENARD WARDEN/C.A.O.,** ) | |
| **MENARD ASST. WARDEN of** ) | |
| **PROGRAMS,** ) | |
| **HEALTHCARE UNIT ADMINISTRATORS** ) | |
| **OFFICE,** ) | |
| **CONNIE DOLCE,** ) | |
| **JANE/JOHN DOE 1 (Nursing Staff),** ) | |
| **JANE/JOHN DOE 2 (Scheduling Personnel),** ) | |
| **WEXFORD ON-SITE MEDICAL DIR.,** ) | |
| **TREATING GENERAL PRACTITIONER,** ) | |
| **PHYSICIANS ASSISTANT,** ) | |
| **NURSE PRACTITIONERS,** ) | |
| **PHYSICAL THERAPIST,** ) | |
| **ADA COORDINATORS OFFICE,** ) | |
| **JANE/JOHN DOE 3 (Mental Health),** ) | |
| **JANE/JOHN DOE 4 (Correctional),** ) | |
| **JANE/JOHN DOE 5 (Clinical Services),** ) | |
| **JANE/JOHN DOE 6 (Grievance Office), and** ) | |
| **DARREL S. CUTLER,** ) | |
| ) | |
| **Defendants.** ) | |

1

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Jorge Pena, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. He claims that he suffered a hand fracture that was improperly treated. He seeks monetary damages and a referral for proper medical care. (Doc. 1).

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1): Plaintiff's left hand was injured in a fight on May 23, 2022 in the North Two infirmary holding cage at Menard (Doc. 1, p. 13). He was seen promptly by a nurse who prescribed ibuprofen, noted "slight swelling," and told Plaintiff she would schedule him for x-rays and to see the doctor. She explained that the referrals would take a while because there was no radiologist or doctor on staff.

Plaintiff saw a Jane Doe nurse on May 25, 2022 who prescribed ibuprofen and a cold pack. He saw Nurse Oakley on June 6, 2022 who continued his ibuprofen. On June 12, 2022, Plaintiff saw another Jane Doe nurse. Each of these nurses also told Plaintiff that there was no doctor or radiologist on staff. Plaintiff finally received an x-ray outside the prison on June 21, 2022 which showed an acute fracture.

On June 25, 2022, a Menard nurse practitioner noted Plaintiff should be sent out for an "emergency" evaluation of the injured hand. That evaluation was done by Timothy O'Leary at S.I.H. Memorial Hospital of Carbondale. O'Leary prescribed a referral to orthopedic surgery and a stronger pain medication (Meloxicam 15 mg. for 30 days) (Doc. 1, pp. 14-15). However, that pain prescription was not followed, and on June 25, 2022, an unknown Menard nurse practitioner altered it to 50 mg. of Tramadol for only five days (Doc. 1, pp. 15-16).

Plaintiff continued to suffer unrelieved pain in his hand and experienced a feeling of bones grinding. The ibuprofen he received offered no relief. He submitted multiple sick call slips – 18 through the mail and many more handed in person to nurses who toured his housing unit – in addition to verbal requests for treatment, to no avail. Plaintiff wrote and spoke to mental health personnel, seeking their help to obtain medical treatment. He asked Jane/John Doe Correctional Officers for help to get medical and mental health care (Doc. 1, pp. 16-17, 19, 25-26, 28-29). Plaintiff has been diagnosed with schizophrenia and the lack of medical care caused him psychological trauma.

Plaintiff filed the first of several grievances seeking medical care on June 30, 2022 (Doc. 1, p. 16). His grievances have often been lost or yielded no response (Doc. 1, pp. 29-30).

Plaintiff saw Defendant PA-C Darrel S. Cutler at the Orthopedic Institute of Southern Illinois on July 1, 2022 (Doc. 1, p. 16). Cutler determined that because Plaintiff's left-hand injury occurred more than a month earlier, it was "well on the way" to be healed. He prescribed a thumb spica splint for Plaintiff for 3-4 weeks, with a follow-up x-ray. Cutler determined on July 26, 2022, that Plaintiff's thumb had healed, but with limited range of movement and "PX Arthrofibrosis." Id. Cutler prescribed physical and occupational therapy ("PT/OT") for 4-6 weeks. Cutler did not order further imaging to see whether Plaintiff had any soft tissue damage;

3

he based his diagnosis only on a one-dimensional x-ray (Doc. 1, pp. 30-31).

Plaintiff wrote to the Defendant IDOC Medical Director explaining the effects of his injury, the ineffectiveness of the ibuprofen and Tylenol given by Menard providers, and his need for medical and mental health treatment, but got no response (Doc. 1, pp. 17-18, 26). Plaintiff also wrote about these problems to the Litigation Counselors of Defendant Wexford Health Sources, Inc. ("Wexford"), requesting them to forward his letters to Wexford and to its parent company, Defendant Bantry Group Corp. He also wrote the Bantry Group directly (Doc. 1, pp. 17-18). Plaintiff wrote to Wexford's home office, the Defendant Wexford President/CEO, and Defendant Wexford Vice Presiding/CFO, informing them that he was being denied care by their Menard on-site providers because they had no on-site doctor or radiologist; his sick call slips were not being answered; he was not receiving pain medication for extended periods; and he was not being seen by mental health providers (Doc. 1, pp. 17-18). Plaintiff directed similar written requests to the Defendant State of Illinois Strategic Sourcing Manager and State Purchasing Officer, because they were involved in contracting with Wexford for prisoners' medical care. He wrote Defendant Illinois Department of Healthcare and Family Services as the "so called sister/parent company of IDOC" (Doc. 1, p. 19). Plaintiff received no response from any of these entities. Plaintiff wrote Defendant IDOC Administrative Review Board, explaining his injury and its effects, complaining that Wexford providers gave him only ibuprofen, which was ineffective to treat his pain, and complaining that Menard officials prevented him from using the grievance process to seek redress or exhaust his claims (Doc. 1, p. 19).

Plaintiff wrote to Defendant Wills (Menard Warden/CAO) multiple times about his injury, lack of care, and the failure to have doctors and other providers on staff, which breached Wexford's contractual obligations; Wills never responded (Doc. 1, pp. 20-21). Defendants Menard Assistant

4

Warden of Programs, Grievance Offices, Clinical Services, and Healthcare Unit likewise failed to respond to Plaintiff's written complaints over their failure to carry out their duties to respond to grievances and ensure that Wexford performs its duties (Doc. 1, pp. 21-22).

Plaintiff wrote multiple letters to the Healthcare Unit Administrator ("HCUA"), complaining about belligerent comments made by the Jane Doe Nurse on May 23, 2022, and Nurse Oakley on June 6, 2022, who blamed him for his injury because he got into a fight and who didn't believe his hand was broken (Doc. 1, p. 22). Plaintiff also told the HCUA that Jane Doe Nurses had repeatedly falsified his records by "lowballing" his reported pain as less than what he reported, which interfered with his specialist-prescribed treatment (Doc. 1, pp. 22-23, 25). He complained that he did not receive hand surgery that allegedly had been scheduled, and did not get his prescribed physical therapy because the on-site physical therapist lacked the needed equipment (Doc. 1, pp. 23, 27). He further complained to the HCUA that nursing staff were not responding to his sick call slips and medical records personnel were not doing their jobs.

Plaintiff wrote numerous letters regarding the lack of medical care to Defendant Connie Dolce (Director of Nursing) (Doc. 1, p. 24). Dolce lied about not having received Plaintiff's 2022 grievance (No. 92-7-22) and falsely stated Plaintiff had not filed new complaints of worsening pain. Plaintiff informed the HCUA of Dolce's falsehoods.

The Defendant Physical Therapist told Plaintiff to squeeze a sock ball because he had nothing else for him to rehabilitate with, despite Plaintiff informing the therapist that an orthopedic specialist had prescribed specific physical therapy (Doc. 1, p. 27). The sock ball did not help.

Plaintiff's hand is now partially paralyzed and still painful two years after his injury, and he still suffers psychological distress (Doc. 1, p. 24, 26). He believes he sustained soft tissue damage and should have had an MRI or CAT scan long ago (Doc. 1, p. 26). His request to the

Defendant ADA (Americans with Disabilities Act) Coordinator for assistance yielded no response (Doc. 1, p. 27).

Plaintiff claims that all Defendants "collusively" subjected him to cruel and unusual punishment, denied him due process, violated the ADA and Rehabilitation Act, the Federal Bystander Rule, and engaged in other misconduct including state law assault and battery and negligence (Doc. 1, pp. 31-32). He requests monetary damages and an order for Wexford or its agents to arrange an immediate examination of his partially paralyzed hand by a qualified physician, as well as physical therapy and any other follow-up treatment (Doc. 1, pp. 33-34).

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

| | |
|---|---|
| Count 1: | Eighth Amendment deliberate indifference to serious medical needs claim against all Defendants for delaying Plaintiff's initial testing/diagnosis and doctor referral following his May 23, 2022, left hand injury, until June 25, 2022. |
| Count 2: | Eighth Amendment deliberate indifference to serious medical needs claim against the John/Jane Doe Nurse Practitioner for failing to follow provider O'Leary's June 25, 2022 prescription for pain medication and against the John/Jane Doe Physical Therapist for failing to follow Defendant Cutler's July 26, 2022 order for physical therapy for his hand. |
| Count 3: | Eighth Amendment deliberate indifference claim against all Defendants for failing to provide Plaintiff with effective pain medications for his hand injury. |
| Count 4: | Eighth Amendment deliberate indifference claim against all Defendants for failing to provide Plaintiff with mental health care following his hand injury. |
| Count 5: | Claim against all Defendants for preventing Plaintiff from accessing the grievance procedure and/or failing to respond to his grievances regarding medical/mental health care following his hand injury. |
| Count 6: | ADA and/or RA claim against the ADA Coordinator/ADA Coordinator's Office for failing to respond to Plaintiff's requests for |

      assistance related to his partially paralyzed left hand.

Count 7:  Medical negligence claim against Cutler for failing to conduct further testing to determine whether Plaintiff sustained tissue or other damage to his left hand.

Count 8:  State law claim for assault and battery and negligence against all Defendants.

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

## Discussion

### Preliminary Dismissals

  The Complaint mentions several individuals by name who are not included among the defendants or listed in the case caption (Doc. 1, pp. 14-15). Therefore, any purported claims against these individuals are dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption").

  "Neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment). Accordingly, Plaintiff cannot maintain a civil rights lawsuit for damages against the defendant state government

7

agencies or their divisions; the IDOC Administrative Review Board and Illinois Department of Health and Family Services will be dismissed from the action without prejudice.

Plaintiff seeks to hold the State of Illinois Purchasing Officer and Strategic Sourcing Manager responsible for the alleged failure to provide him with adequate health care based on their involvement in contracting with Wexford. Even if, as Plaintiff suggests, these defendants breached or failed to correct a breach of the contract to provide health care to IDOC inmates, such a contractual claim does not amount to a constitutional violation. *See Taake v. Cnty. of Monroe*, 530 F.3d 538, 542-43 (7th Cir. 2008) (citing *Garcia v. Kankakee County Hous. Auth.,* 279 F.3d 532, 535 (7th Cir. 2002)). The Purchasing Officer and Strategic Sourcing Manager for the State of Illinois will therefore be dismissed from the action.

Plaintiff's miscellaneous claims including misappropriation of funds, theft, fraud, perjury, deviation from AMA standards of care, and the supposed "Federal Bystander Rule" (Doc. 1, pp. 31-32) do not implicate constitutional rights and are therefore dismissed without prejudice. Plaintiff also complains of "due process violations" (Doc. 1, pp. 2-3). This Fourteenth Amendment claim is duplicative of the Eighth Amendment claims discussed below and is dismissed. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005).

**Count 1**

Prison officials and medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021). A defendant is deliberately indifferent if s/he

8

either "knows of and disregards an excessive risk to inmate health or safety" or "is both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he draws the inference." *Id.* at 824-25 (quotation omitted). "Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). For an official to be found liable under § 1983, the individual must have been personally responsible for the constitutional violation. *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021).

Plaintiff's hand injury was an objectively serious condition. Plaintiff allegedly saw three nurses who told him that because there was no doctor or radiologist on staff, his scheduled x-ray and doctor visit would be delayed. Plaintiff does not allege that these nurses were responsible for the lack of staff or that they could have sped up his referral but did not do so. As such, he fails to state a viable claim that these nurses were deliberately indifferent to his need for treatment.

The nurse practitioner who evaluated Plaintiff on June 25, 2022 sent him for an emergency evaluation, which appears to have been done that day. That action did not amount to deliberate indifference.

Plaintiff does not allege that he communicated with any of the other defendants between the time of his injury and his June 25, 2022 evaluation to alert them to the ongoing delay in seeing a doctor or getting an x-ray. He states that he first filed a grievance over the matter on June 30, 2022, after he had been evaluated at Memorial Hospital. Because the Complaint contains no facts to suggest that any of the other individual defendants knew about his injury and need for a timely doctor and x-ray referral before June 25, 2022 and failed to take any action, Plaintiff fails to state a deliberate indifference claim against them.

Defendant Wexford, a corporation that employs the medical provider defendants and

9

provides medical care at the prison, cannot be held liable solely on that basis. The same is true for Wexford's parent Bantry Group. Rather, a corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Plaintiff does not allege that any individual defendant either acted or failed to act because of an official Wexford policy. Therefore, he fails to state a viable claim in Count 1 against Wexford or the Bantry Group.

For these reasons, Count 1 will be dismissed without prejudice.

### Count 2

Plaintiff's allegation that on June 25, 2022, the individual John/Jane Doe Nurse Practitioner failed to follow outside specialist O'Leary's pain prescription by substituting a five-day course of Tramadol for the prescribed 30-day course of Meloxicam, is sufficient to state a claim for deliberate indifference. *See Perez v. Fenoglio*, 792 F.3d 768, 777-79 (7th Cir. 2015). Plaintiff also states a viable claim against the John/Jane Doe Physical Therapist who allegedly failed to follow outside provider Cutler's order of July 26, 2022 for physical therapy.

Count 2 survives § 1915A review against this John/Jane Doe Nurse Practitioner and the John/Jane Doe Physical Therapist. However, Plaintiff must identify these individuals by name before this claim can proceed.

### Count 3

The failure to treat pain may amount to an Eighth Amendment violation. *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Grieveson v. Anderson*, 538 F.3d 763, 778–80 (7th Cir. 2008); *Edwards v. Snyder*, 478 F.3d 827, 830–32 (7th Cir. 2007). That said, Plaintiff cannot sustain this

claim against every official to whom he allegedly wrote letters of complaint. *See Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009). There is no supervisory liability in a § 1983 action; liability will attach only to those individuals who personally caused or participated in a constitutional deprivation. *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005). Additionally, because Plaintiff does not allege that a Wexford policy caused its providers to deny him pain medication, he does not state a colorable claim in Count 3 against Wexford, its officers, or the Bantry Group.

Plaintiff alleges that he handed sick call slips and made verbal requests to numerous nurses seeking medical treatment, but it is unclear how many of those related to his need for pain relief. Plaintiff does not specify the dates of these encounters, nor does he supply any identifying information about the nurses. He also claims that an undefined group of medical providers, as well as others from whom he sought help, violated his constitutional rights (Jane/John Doe Nursing Staff, Scheduling Personnel, On-Site Treating General Practitioner(s), Physician's Assistant(s), Nurse Practitioners, On-Site Mental Health Personnel, Jane/John Doe Correctional Personnel, Clinical Services Personnel, and Grievance Office Personnel). This runs afoul of the pleading standards in *Iqbal* and *Twombly*. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement). Plaintiff must make plausible allegations against identifiable individuals. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (complaint must describe "more than a sheer possibility that a defendant has acted unlawfully"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). Because the Complaint fails to meet these pleading standards, Count 3 cannot proceed against the defendant groups listed above.

Plaintiff identifies specific individuals to whom he allegedly made written or verbal complaints that he was not receiving adequate pain medication: the IDOC Medical Director, Warden Wills, the Menard Assistant Warden of Programs, the Health Care Unit Administrator, Director of Nursing Dolce, and the Wexford On-Site Medical Director. A deliberate indifference claim may proceed against medical and non-medical prison officials who were informed about inadequate medical care for a plaintiff's serious medical condition but failed to intervene. *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015). Count 3 may therefore proceed only against the IDOC Medical Director, Warden Wills, the Menard Assistant Warden of Programs, the Health Care Unit Administrator, Director of Nursing Dolce, and the Wexford On-Site Medical Director. Plaintiff must identify by name the individuals who held the positions of IDOC Medical Director, Menard Assistant Warden of Programs, Menard Health Care Unit Administrator, and Wexford On-Site Medical Director at the time(s) he communicated with them so that they may be served with the Complaint.

### Count 4

This claim focuses on the alleged failure to provide Plaintiff with mental health care after he sustained the hand injury and suffered ongoing pain and inadequate healing. Plaintiff does not identify any specific individual who was aware of his mental health needs but failed to respond to his request(s) for care. He names only the undefined group of Wexford On-Site Mental Healthcare personnel and Jane/John Does (Doc. 1, pp. 11, 28). Plaintiff cannot proceed against a vague group of unknown defendants. Therefore, Count 4 will be dismissed without prejudice.

### Count 5

"[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The

Constitution requires no procedure at all, and the failure of state prison officials to follow their own grievance procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Further, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Thus, Plaintiff cannot maintain a claim against defendants for preventing him from accessing the grievance procedure or failing to respond to his grievances. Count 5, the Doe Clinical Services Personnel, and the Doe Grievance Office Personnel will therefore be dismissed from the case with prejudice.

**Count 6**

Plaintiff alleges that he requested assistance from the ADA Coordinator's Office in connection with the "partial paralysis" of his left hand but got no response (Doc. 1, pp. 27-28). Title II of the ADA prohibits public entities from denying qualified individuals with disabilities the opportunity to participate in the services, programs, or activities of the public entity because of their disabilities, and prohibits discrimination against disabled individuals by a public entity. 42 U.S.C. § 12132. To state a claim for discrimination under both the ADA and the Rehabilitation Act ("RA"), a plaintiff must plead facts suggesting: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability. *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005).

Plaintiff's hand impairment may qualify as a disability under the ADA and RA. However, he does not allege or suggest that he was excluded from a service, program, or activity, or denied an accommodation he should have received on account of his alleged disability. As such, he fails

13

to state a claim upon which relief may be granted. Count 6 and the ADA Coordinator's Office will be dismissed without prejudice.

### Count 7

Plaintiff asserts that outside medical provider PA-C Cutler was negligent for failing to order imaging such as an MRI or CAT scan to determine whether he had soft tissue damage. He alleges that when he first saw Cutler, he x-rayed his hand and prescribed a splint. He further alleges that Cutler prescribed PT/OT to treat his limited range of movement at a follow up visit. Cutler, a non-prison medical provider, is not a "state actor" who can be held liable in a civil rights case. And because Plaintiff cannot maintain a federal constitutional claim against Cutler, this Court will not consider Plaintiff's state law medical negligence claim in this action. Count 7 and Cutler will be dismissed from the case.

### Count 8

Where a district court has original jurisdiction over a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). Illinois law defines battery as "the unauthorized touching of another's person," *Boyd v. City of Chicago*, 880 N.E.2d 1033, 1043-44 (Ill. App. Ct. 2007), that results in "offensive contact" with that person, *McNeil v. Carter*, 742 N.E.2d 1277, 1281 (Ill. App. Ct. 2001). An assault consists of "(1) a threatening *gesture*, or an otherwise innocent gesture made threatening by the accompanying words, that (2) creates a reasonable apprehension of an *imminent* battery." *Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004) (emphasis in original) (citing *Merheb v. Illinois State Toll Highway Authority*, 267 F.3d 710, 714 (7th Cir. 2001)). Plaintiff does not describe conduct by any defendant that would support

a claim for assault and/or battery. Accordingly, this portion of Count 8 will be dismissed.

Plaintiff also claims negligence against all defendants. Because Plaintiff will be allowed to proceed with his constitutional claims against certain defendants in Counts 2 and 3, the allegations underlying those claims also support a state law negligence claim. Count 8 will therefore proceed only on a negligence claim against the John/Jane Doe Nurse Practitioner, the John/Jane Doe Physical Therapist, the IDOC Medical Director, Warden Wills, the Menard Assistant Warden of Programs, the Health Care Unit Administrator, Director of Nursing Dolce, and the Wexford On-Site Medical Director.

### Injunctive Relief

Because the Complaint includes a request for injunctive relief for further evaluation and treatment of Plaintiff's left hand, Defendant Wills will remain as a defendant in his official capacity as the Warden of Menard Correctional Center, regarding this request. *See Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (holding warden is proper defendant for injunctive relief claim as he would be responsible for ensuring that any injunctive relief would be carried out).

### Official Capacity Claims

Plaintiff raises claims against each defendant in his or her individual and official capacities. However, Plaintiff's claims for monetary damages may only be pursued against state officials in their individual capacities. *Brown v. Budz*, 904 F.3d 904, 918 (7th Cir. 2005); *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987). Accordingly, with the exception of Defendant Wills as noted above, the official capacity claims against the individual defendants are dismissed without prejudice.

### Unknown/John/Jane Doe Defendants

Plaintiff is responsible for securing information aimed at identifying the

Unknown/John/Jane Doe Defendants, in accordance with the John/Jane Doe Identification Order that will be entered separately. Once the names of the unknown defendants are obtained, Plaintiff must file a motion to substitute the newly identified defendants in place of the generic designations in the case caption and throughout the Complaint. Defendant Wills, in his official capacity as the current Warden of Menard Correctional Center, will remain as a defendant for the purpose of responding to Plaintiff's requests for information regarding the identity of the Unknown Defendants.

## Pending Motions

Plaintiff's Motions for Appointment of Counsel (Docs. 2, 8) are **DENIED**. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). In determining whether to recruit counsel, the Court considers whether the *pro se* party has made reasonable efforts to secure counsel on his own and his ability to litigate the case on his own. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Here, Plaintiff has demonstrated his unsuccessful efforts to obtain counsel (Doc. 2, pp. 3-10; Doc. 8, pp. 3-10). However, at this early stage of the litigation, it is difficult to accurately evaluate the need for assistance of counsel, so recruitment of counsel would be premature. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel...cannot be gauged.").

Should Plaintiff encounter difficulties in self-representation as this case proceeds, he may refile his motion seeking recruitment of counsel.

## Disposition

The Complaint states colorable claims in Count 2 against the John/Jane Doe Nurse Practitioner and the John/Jane Doe Physical Therapist, in Count 3 against the IDOC Medical

Director, Warden Wills, the Menard Assistant Warden of Programs, the Health Care Unit Administrator, Director of Nursing Connie Dolce, and the Wexford On-Site Medical Director; and in Count 8 for negligence against the above defendants.

Counts 1, 4, 6, 7, and the portion of Count 8 containing the assault and battery claim are **DISMISSED** without prejudice. Count 5 and Defendants Jane/John Doe 5 (Clinical Services) and Jane/John Doe 6 (Grievance Office) are **DISMISSED with prejudice**. Defendants IDOC Administrative Review Board, Illinois Department of Health and Family Services, Purchasing Officer-State of Illinois, Strategic Sourcing Manager-State of Illinois, Wexford Health Sources, Inc. President/CEO, Wexford Health Sources, Inc. Vice President-CFO, Bantry Group Corp., Jane/John Doe 1 (Nursing Staff), Jane/John Doe 2 (Scheduling Personnel), Treating General Practitioner, Physicians Assistant, ADA Coordinators Office, Jane/John Doe 3 (Mental Health), Jane/John Doe 4 (Correctional), and Darrel S. Cutler are **DISMISSED** without prejudice. The Clerk is **DIRECTED** to **SUBSTITUTE** the "Healthcare Unit Administrator" for the current Defendant "Healthcare Unit Administrators Office," and **SUBSTITUTE** the "John/Jane Doe Nurse Practitioner" for the current Defendant "Nurse Practitioners."

The Clerk shall prepare for Menard Warden A.D. Wills (individual and official capacity), and Connie Dolce: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules

of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and

Accountability Act.

**IT IS SO ORDERED.**

**DATED:  February 14, 2025**

<u>*s/ Staci M. Yandle*</u>
**STACI M. YANDLE**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.